898 So.2d 280 (2005)
Vicki Coudrain LANZA
v.
Louis LANZA.
Nos. 2004-C-1314, 2004-C-1756.
Supreme Court of Louisiana.
March 2, 2005.
Rehearing Denied April 29, 2005.
*281 Lowe, Stein, Hoffman, Allweiss & Hauver, Mitchell J. Hoffman, Suzette Marie Smith, Marynell Lapuyade Piglia, New Orleans, for Applicant.
Herman, Herman, Katz & Cotlar, David Kendrick Fox, Steven J. Lane, New Orleans, for Respondent.
VICTORY, J.
The issues presented in these two consolidated writ applications are (1) whether a State Farm Agency is community property subject to partition and, if not, (2) whether an ex-spouse is entitled to any portion of renewal commissions or "service compensation" received by the insurance agent spouse after termination of the community on insurance policies written during the community. After reviewing the record and the applicable law, we affirm the judgment of the court of appeal and hold that the State Farm Agency is not community property subject to partition, but that the ex-spouse is entitled to the portion of renewal commissions received after termination of the community to the extent that these commissions were the result of effort, skill, or industry of the insurance agent spouse during the community.

FACTS AND PROCEDURAL HISTORY
Louis Lanza and Vicki Lanza, now Vicki Coudrain, were married on August 1, 1975. On January 23, 1981, Mr. Lanza signed an Agent's Acceptance of Agreement to become a State Farm agent pursuant to the terms and conditions set out in a document entitled "State Farm Agent's Agreement." Mr. Lanza then began operation of the Lou Lanza State Farm Agency (the "Agency"). A Petition for Divorce was filed on September 11, 1997, and a Consent Judgment of Divorce was entered into on August 12, 1998, based on the parties having lived apart for the requisite time period. Mr. Lanza has remained a State Farm agent after the divorce. The parties were unable to reach an agreement as to the partition of community property, particularly as to whether the Agency managed by Mr. Lanza or any benefits derived therefrom are community property subject to partition.
After a three-day trial, the trial court first found the Agency was "a non-entity" and therefore, "not a `thing' which is subject to partition." The trial court then rendered judgment in favor of Mr. Lanza on March 7, 2003, with the decree "that the State Farm agency, including any income earned by Mr. Lanza after the filing of the Petition for Divorce, is not property subject to partition, nor is it community property to which [Ms. Coudrain] holds an ownership interest." The court of appeal affirmed the portion of the judgment that held that the Agency was a non-entity and not a "thing" under the La. Civil Code subject to partition, but reversed the judgment with respect to whether "any income earned by Mr. Lanza after the filing of the Petition of Divorce" is property subject to partition or community property to which Ms. Coudrain holds an ownership interest, *282 finding that Ms. Coudrain is entitled "to at least a portion of the renewal commissions from polices written during the existence of the community property regime." Lanza v. Lanza, 03-1382 (La.App. 4 Cir. 4/28/04), 874 So.2d 890. The case was remanded to determine the extent to which the renewal commissions are the result of Mr. Lanza's effort, skill, or industry during the existence of the community property regime. We granted Ms. Coudrain's writ application which assigns as error that the appellate court erred in affirming the trial court's determinations that the Agency is a non-entity and not a "thing" under the La. Civil Code subject to partition and that the Agency was not community property in which Ms. Coudrain had an ownership interest. Lanza v. Lanza, 04-1314 (La.10/8/04), 883 So.2d 1025. We granted and consolidated Mr. Lanza's writ application which assigns as error that the appellate court erred in overruling the trial court's determination that Ms. Coudrain was not entitled to any income earned by Mr. Lanza after the filing of the Petition for Divorce. Lanza v. Lanza, 04-1756 (La.10/8/04), 883 So.2d 1024.

DISCUSSION

Is the Agency community property subject to partition?
Ms. Coudrain asserts two theories to support her position that the Agency is community property subject to partition.[1] First, she argues that the lower courts erred in finding that the Agency was a "non-entity" and not a "thing" subject to partition because the proper inquiry is whether the Agency is "property," which she argues is anything that meets the definition of the "patrimony" of Mr. Lanza. Second, she argues that the Agency is a "community enterprise" under La. C.C. art. 2369.3, in which she is entitled to share in the co-owned income generated thereby.
Before an asset can be classified as community or separate, it must first be identified as "property." Hare v. Hodgins, 586 So.2d 118, 122 (La.1991). Ms. Coudrain argues that "property" comprises not just "things" but is defined in the broadest sense of the word as follows:
the word property is used broadly to denote rights forming part of a person's patrimony, and narrowly rights conferring on a person a direct and immediate authority for the use and enjoyment of a thing that is susceptible of appropriation. Thus, leases, contractual or delictual causes of action, interests in pension plans, the rights to pursue employment and to conduct a business, and uncopyrighted designs are property in the broad sense. All real rights, such as ownership, personal servitudes, predial servitudes, and mineral servitudes, are property in the narrow sense.
2 A.N. Yiannaopoulos, Louisiana Civil Law Treatise, Property, § 1 (1967). In Due v. Due, this Court adopted this broad definition of "property" in the community property context, concluding that "property, in its broad sense, denotes all patrimonial rights" and that "the civil law concept of patrimony includes the total mass of existing or potential rights and liabilities attached to a person for the satisfaction of his economic needs." 342 So.2d 161, 165 (La.1977) (citing Yiannopoulos, supra). *283 However, as explained by Professors Spaht and Hargrave, while "it appears that the assets to be shared should be those that are considered patrimonial assets in a broad sense," the dividing line is unclear and "[i]t also appears impossible to determine that a right is or is not patrimonial for all purposes." Katherine S. Spaht and W. Lee Hargrave, 16 Louisiana Law Treatise, § 2.3, pp. 26-27. As a pertinent example, they explain that while some cases have referred to "one's ability to work and enjoy the fruits of his labor" as a patrimonial right, that is only patrimonial from a substantive due process standpoint. Id. The ability to work and enjoy wages would not be patrimonial in the sense that it would be included as a community asset because "it is implicit in the Civil Code's scheme that only wages earned during the community are community property." Id., § 2.3, p. 27. Thus, whether an asset is "patrimonial" under the broad definition is not determinative, and the "decision to be made for a particular asset will be one that has to be determined in light of basic policies and problems related to how the asset functions and how it was produced." Id. In addition, Professor Spaht notes that while anything capable of pecuniary evaluation may be a patrimonial right, in order to be community property, "it must also be classified as community by the legislation. . ." Id., § 2.8, p. 39, n. 4.
Perhaps the broadest view of a patrimonial right found to be community property was taken in Due, supra, where this Court held that a lawyer husband's contingency fee contract acquired during the community "creates in the husband a patrimonial asset, i.e., (in ordinary language) `property,' . . . and which (to the extent that his labor and industry contribute during the marriage . . .) is an asset of the community," even though the attorney's right to collect this fee was conditional and uncertain.[2] Consequently, the Court held that the ex-wife was entitled to obtain information regarding the existence and value of these contracts acquired during the marriage and to the inclusion of these contracts in an inventory of community property. However, we specifically did not reach the issue of whether her right to share in the community's share of the proceeds accrued when and if the fee was collected or whether she was entitled to a present accounting in the partition of the estimated value at the date of dissolution, which is, in effect, the issue before us today.
In addressing the distinct issues involved in this case, multiple factors emerge which mitigate against classifying the Agency as a community asset subject to partition. First and foremost, pursuant to the agency agreement confected between Mr. Lanza and State Farm, Mr. Lanza has no ownership interest in the Agency. Neither the State Farm Agent's Agreement nor any interest thereunder can be sold, assigned or pledged by the State Farm agent. In addition, no right in *284 any sum due or to become due to a State Farm agent can be sold, assigned or pledged absent prior written consent of State Farm. The agent owns no "book of business" which would become his upon termination of the Agency. In the event of the death, retirement, and/or termination of an agent, neither the agent nor his heirs receive service compensation for anything other than work performed up until the death, retirement or termination of the agent. All information provided to an agent during the course and scope of his term as a State Farm agent are trade secrets wholly owned by State Farm and are the sole and exclusive property of State Farm. All monies collected by the agent, with the exception of service compensation received from State Farm, are the absolute property of State Farm. Once an agent's relationship with State Farm ends, all clients, income, and information related to those clients are the property of State Farm. In the event an agent dies, retires, or is terminated, the entirety of the policies previously serviced by him would be transferred to another agent. The new agent would receive the service compensation for servicing those policies. The State Farm Agent Agreement can be terminated at will by either State Farm or the agent. At such time, any and all right to receive service compensation from State Farm ceases based on work performed to that date. State Farm furnishes agents with manuals, forms, records and such other materials and supplies as State Farm deems advisable to provide and all such property remains the property of State Farm. Finally, State Farm retains the ultimate authority to prescribe all policy forms and provisions, to set the amount and determine premiums, fees and charges, to determine the rules governing the policies, and governing the adjustment of payment of losses.
Considering the above factors, we find Mr. Lanza's rights under the State Farm Agency Agreement do not constitute property rights in the community property law context. Thus, we reject Ms. Coudrain's argument that the trial court erred in finding that the Agency was a non-entity and not a "thing" subject to partition as the Agency does not meet even the broader definition of "patrimony."[3]
*285 Ms. Coudrain next argues that the Agency is a "community enterprise" under La. C.C. art. 2369.3[4], in which she is entitled to share in the co-owned income generated thereby. La. C.C. art. 2369.3 provides:
A spouse has a duty to preserve and to manage prudently former community property under his control, including a former community enterprise, in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.
A community enterprise is a business that is not a legal entity.
Ms. Coudrain contends that the Agency is a "business that is not a legal entity," and as such is a "community enterprise" under La. C.C. art. 2369.3. Ms. Coudrain reasons that the legislature would not have imposed "a duty to preserve and to manage prudently former community property under his control, including a former community enterprise. . ." if community enterprises, i.e., businesses that are not legal entities, were not community property.
However, this Civil Code article's expansive definition of a community enterprise to include a business that is not a legal entity cannot be interpreted to circumvent the traditional definition of property under the Louisiana Civil Code. The community enterprise must still qualify as "property" under Louisiana's community property laws.[5] We note that Ms. Coudrain does not make a claim for partition of the community enterprise good will, nor does she assert a claim for the Agency's office furnishings, fixtures, or equipment. She does not argue that the agency constituted a partnership or joint venture. Although Ms. Coudrain's expert valued the Louis Lanza Agency as a sole proprietorship, it is not a sole proprietorship, as Mr. Lanza's rights under the Agency Agreement are not commensurate with those of a sole proprietor. Instead, Ms. Coudrain argues that Mr. Lanza is an independent contractor for State Farm and that she is entitled to the stream of income produced. Indeed, the State Farm website *286 clearly states that its agents are "independent contractor agents," which it defines as "self-employed, eligible for benefit coverage at the expense of the agent, and are paid commissions and service compensation from the products and services sold."[6] While Mr. Lanza may be an independent contractor, based on the factors discussed above, his rights as an independent contractor do not constitute property for community property purposes.[7]
Thus, we find that the lower courts were not manifestly erroneous in holding that the Agency is not community property subject to partition. In fact, to partition this agency as community property and thereby give Ms. Coudrain ownership rights in this agency would give Ms. Coudrain more rights in the Agency than Mr. Lanza can ever have. Ms. Coudrain's expert valued this "business" at $2,335,389.00 as of the trial date under a capitalization of earnings approach and at $2,795,063.00 using a discounted future earnings approach based on the Agency's stream of income. Ms. Coudrain seeks a judgment partitioning this asset, which would in effect require Mr. Lanza to pay her at least $1,000,000, representing half the value of the Agency. However, the inequity in this is clear, because if the Agency were permitted to be valued in a theoretical fashion and then partitioned, Ms. Coudrain would be paid in advance for an asset which does not belong to Mr. *287 Lanza, and which cannot be realized by a sale or another method of liquidating value.

Are any portion of the renewal commissions or "service compensation" received by Mr. Lanza after termination of the community on insurance policies written during the marriage community property?
Ms. Coudrain argues that, if the Agency itself is not community property subject to partition, she is at least entitled to a portion of the income earned by Mr. Lanza after termination of the community under this Court's holding in Ross v. Ross, 02-2984 (La.10/21/03), 857 So.2d 384. She argues that Ross stands for the proposition that the policies are "things" capable of producing "fruits," i.e., the renewal commissions, and she and Mr. Lanza are co-owners of these fruits under La. C.C. arts. 2369.1[8] and 2369.2[9]. Pursuant to these articles, Ms. Coudrain claims that the amount of labor expended by Mr. Lanza before and after termination of the community is irrelevant as they share equally these fruits.[10] Mr. Lanza argues that the "service compensation" he received after termination of the community was based solely on post-community effort, skill and industry and is thus his separate property. Ms. Coudrain counters that even if the division of labor is germane to this issue, Mr. Lanza's argument that he expended no community labor to generate these renewal commissions is erroneous. In Ross, this Court recently addressed the rights of an ex-spouse of a State Farm insurance agent to renewal commissions or service compensation; however, in that case, the issue involved renewal commissions paid during the marriage on insurance policies sold prior to the marriage.[11]Ross v. Ross, supra. The Court framed the issue before it as "whether the renewal commissions received by Mr. Ross during the community property regime on insurance policies written before the existence of the community are the result of labor, skill or industry, and are, thus, community property or whether, on the other hand, the renewal commissions are the `civil fruit' of some asset acquired by Mr. Ross prior to the existence of the community, such that they are subject to his declaration of paraphernality." Id. at 387. Mr. Ross's ex-spouse argued that neither the insurance policies nor the State Farm Agency contract constituted " *288 things" or "assets" in which Mr. Ross had an ownership interest and from which fruits may be derived.
After a lengthy discussion, Ross held that the insurance policies were "juridical acts" from which civil fruits (the renewal commissions) can be derived.[12] Having found that the "insurance policies are `things' from which civil fruits may be derived," the Court set out to determine whether the renewal commissions "were in fact `civil fruits' of Mr. Ross' separate property, and not the result of Mr. Ross' effort, skill, or industry during the existence of the community property regime," i.e., whether they were fruits or earnings. Id. at 392 (emphasis added). The Court noted that "if the renewal commissions are the result of Mr. Ross' effort, skill or industry during the existence of the community property regime, the renewal commissions, or at least a portion thereof, are community property . . . in keeping with the basic notion that spouses should share equally `the produce of reciprocal labor and industry of both husband and wife.'" Id.
In determining whether the commissions were fruits or earnings, the Court looked to several appellate cases that have considered whether renewal commissions paid after termination of the community on policies issued during the community were community property. In these cases, the First, Second, and Fourth Circuits have held that this revenue resulted from labor during and after the community, and was to be divided proportionately. See Michel v. Michel, 484 So.2d 829 (La.App. 1 Cir.1986) (affirming the trial court's one-half to one-half division of the revenues as an approximation of the proportionate division and holding that "[w]hile it is true that the spade work had been done when the original sale had been made, some service work had to be performed an in addition there was no certainty that the policies would be renewed"); Futch v. Futch, 26-149 (La.App. 2 Cir. 9/23/94), 643 So.2d 364 (holding that the renewal commissions are community property subject to partition and remanding case to determine the extent of work performed after termination on keeping the policies in force, placing the burden of proof on the husband to establish his entitlement to more than one-half of the renewal commissions); Boyle v. Boyle, 459 So.2d 735 (La.App. 4 Cir.1984), writ denied, 462 So.2d 651 (La.1985) (awarding wife one-half of the renewal commissions on policies written before termination of the community). In the only case to hold otherwise, the Third Circuit in Williams v. Williams, 590 So.2d 649 (La.App. 3 Cir.1991), held that renewal commissions, or "service commission," paid on State Farm policies issued during the marriage were not community property because even if the renewal premiums were attributed to work during and after the community, the value to the community was so speculative that it had no value at all.[13] In Ross, we expressed our agreement with commentators who have *289 opined that the "[e]quitable considerations as well as basic doctrinal principles support the Michel-Boyle-Futch approach, even if the division is approximate." 857 So.2d at 395 (citing Matrimonial Regimes, Louisiana Civil Law Treatise, § 3.4 at p. 58 (1997)). After holding that "[b]ecause the renewal commissions were received during the existence of the community, the burden was upon Mr. Ross to prove that they were not community property," the Court found that the "renewal commissions received by Mr. Ross during the existence of the community property regime were the result of Mr. Ross' effort, skill and industry exerted during the community regime." Id. Accordingly, the Court held that "Ms. Starks is entitled to share in the business income generated by Mr. Ross' work, industry and effort during the marriage." Id. at 397-398.
In this case, the court of appeal interpreted Ross as holding that renewal commissions were civil fruits, and that, therefore, Ms. Lanza was entitled to a portion thereof. 874 So.2d at 892. Specifically, the court of appeal held that "the Ross Court determined that the renewal of a pre-existing State Farm insurance policy constitutes a juridical act and, thus, a thing under La. Civ.Code art. 551 from which civil fruits may be derived and that `if the renewal commissions are the result of the State Farm agent's effort, skill, or industry during the existence of the community property regime, the renewal commissions, or at least a portion thereof, are community property.'" Id. Further, after rejecting Mr. Lanza's argument that he received only service compensation, and thus salary from State Farm, and not renewal commissions, because Ross"reject[ed] the contention that renewal commissions could be deemed salary," the court held that "to the extent that the standard State Farm contract may be interpreted to circumvent basic concepts of Louisiana property law and the rights of spouses with regard to fruits under the Louisiana community property regime, it is against public policy and, therefore, unenforceable." Id. at 892-93.
Upon review, we affirm the judgment of the court of appeal, but for different reasons. In Ross, we did not hold that the insurance policies produced civil fruits, or that the renewal commissions were fruits. The holding in Ross left open the argument that these commissions are civil fruits, in whole or in part, of the contractual right acquired by the spouse-agent to the payment of these commission in accordance with the State Farm Agent's Agreement. See Spaht and Richard D. Moreno, 16 Louisiana Civil Law Treatise, § 3.8, p. 22 (2004 Pocket Part). Further, while a determination of whether the commissions were fruits may have been relevant in Ross regarding the husband's declaration of paraphernality, it is not the determinative issue here, and it was not the determinative issue there, as Ross ultimately held that the renewal commissions were the product, in part, of the effort, skill, and industry of the husband exerted during the marriage, and were therefore community property. See Ross, supra, (Knoll, concurring and stating that the majority took an erroneous, and unnecessary circuitous, route to reach its result) see also Spaht and Moreno, supra at § 3.3, p. 13-14 (2004 Pocket Part) (characterizing the Court's discussion of whether the insurance policies are juridical acts from which civil fruits can be derived as "dicta" given the Court's ultimate holding that the renewal commissions were in fact the product, in part, of the labor, effort and *290 skill or the husband exerted during the marriage).
We ultimately find that the legal issue in this case is a straightforward one, although the resulting factual issues resulting therefrom may not be. The Civil Code defines community property as follows:
The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; . . . and all other property not classified by law as separate.
La. C.C. art. 2338. As explained in Ross:
Wages are the premier community asset. It is wages paid in return for work done during the existence of the community that are included, regardless of when the payment is actually made. The "property acquired," in the language of Louisiana Civil Code Article 2338, is a right to payment at some point for the work done. If payment is made during the community for work done before its commencement, the money is separate. If the check is cut after termination, but is for work done during the community, the funds are community.
Ross, supra at 390 (citing Spaht and Hargrave, supra, § 3.3, p. 48). As stated above, in Ross, we held that renewal commissions paid pursuant to State Farm Agency contracts are community property, in whole or in part, depending on the extent they were earned as a result of the agent-spouse's effort, skill, or industry during the existence of the community property regime. As Justice Knoll explained in her concurrence in Ross, the issue before the court in Ross was the same issue that was before the courts in Michel, Williams, and Futch, [and consequently, this case], "i.e., whether renewal commissions are classified as community or separate when the initial policies were sold during one regime and the renewal commissions were earned in another." Ross, supra at 399-400 (Knoll, J., concurring) "The only difference is that in Michel, Williams, and Futch, [and this case], the policies were sold during the community and the renewal commissions were paid after its termination whereas, in [Ross], the situation is the complete opposite." Ross, supra at 400 (Knoll, J., concurring).
Indeed, we agree that the same principles that determined the outcome in Ross are determinative here. Pursuant to Article 2338, community property comprises "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse," and this includes the right to the payment of any compensation for work done during the community. Therefore, to the extent that Mr. Lanza has received compensation after the community regime for work performed during the community, this compensation is community property.
Regarding the applicable burden of proof, in Ross, this Court held that, because the renewal commissions were received during the existence of the community, the burden of proof was on the husband to prove that the commissions were not community. Ross, supra at 396. This is because property which comes into the possession of a spouse during the community regime is presumed to be community, regardless of the source. La. C.C. art. 2340; Talbot v. Talbot, 03-0814 (La.12/12/03), 864 So.2d 590, 597.
However, in this case, there is no presumption of community as to these renewal commissions because the income at issue did not come into Mr. Lanza's possession during the community regime. La. C.C. art. 2340. While Ms. Coudrain's argument that a portion of this income was for work done during the existence of the community and thus constitutes "property acquired" during the community under La. C.C. art. 2338, the presumption of community *291 found in La. C.C. art. 2340 applies only to "[t]hings in the possession of a spouse during the existence of community of acquets and gains. . ." Therefore, Ms. Coundrain will have the burden of proving, by a preponderance of the evidence, which portion Mr. Lanza's post-community income resulted from policies initially issued during the community, and of those policies, how much of the resulting service compensation was due to Mr. Lanza's effort, skill, or industry exerted during the community.[14] We recognize that the trial court issued its judgment, after a trial on the merits, without the guidance of Ross, which was decided shortly thereafter. Therefore, in the interest of justice, on remand, the trial judge should receive and consider additional evidence relevant to whether any portion of Mr. Lanza's post-community income resulted from his effort, skill, and industry during the community.

CONCLUSION
In this case, because of the agency agreement confected between Mr. Lanza and State Farm, the Agency is not community property subject to partition because it does not constitute "property" under our community property laws. However, Ms. Coudrain is entitled to any portion of renewal commissions or "service compensation" received by Mr. Lanza after termination of the community on insurance policies written during the community that is due to Mr. Lanza's effort, skill, or industry during the community under La. C.C. art. 2338.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed and the matter is remanded to the trial court for further proceedings in accordance with this opinion.
AFFIRMED; REMANDED.
JOHNSON, J., concurs.
NOTES
[1] Under this theory, Ms. Coudrain argues that all income generated by the former "community enterprise" is income which is co-owned by Mr. Lanza and Ms. Coudrain until the "community enterprise" is partitioned. This would include both "renewal commissions" earned following termination of the community on policies first issued during the marriage as well as commissions earned on policies issued post-termination.
[2] The most important factors leading to this holding were that the contingent fee contract is legislatively recognized as creating in the attorney an enforceable right to share in the proceeds eventually recovered, that even though the mandate could terminate the relationship at will, the attorney could still recover the value of his services to date, and that the right to compensation under the contingency fee contract was heritable. 342 So.2d at 164-166. Thus, the attorneys' interest in the contingency fee contracts constituted a patrimonial asset for community property purposes primarily because "the attorney himself, or his heirs, have enforceable rights that arise even before final completion of an attorney's services." Id., at 165. Further, contingency fee contracts "fit with the basic rules that govern community assets," as they can be held in indivision until the contingency ended, as with pension rights. Spaht and Hargrave, supra, § 2.4, p. 28.
[3] La. C.C. art. 2325 provides "A matrimonial regime is a system of principles and rules governing the ownership and management of the property of married persons as between themselves and toward third persons." Comment (b) to that article explains:

In the Louisiana Civil Code of 1870, the word "property" is at times a translation of the word propriete and at times a translation of biens. See Yiannopoulos, Civil Law Property § 1 (2d ed.1980). Following the terminology of the 1870 Code, the word "property" in this revision is at times used to mean things (see, e.g., Articles 2338, 2365, infra), and at times to mean patrimony (see, e.g., Articles 2325, 2335, 2374-2376, infra). Article 2338 defines and lists what is considered community property and Article 2365 addresses the satisfaction of community obligations with separate property. Article 2335 sets forth the classification of property as either community or separate. Articles 2374-2376 govern judgments of separation of property, the effect of those judgments, and the rights of creditors regarding those judgments.
Patrimony is the broader and more inclusive term, including "the total mass of existing or potential rights and liabilities attached to a person for the satisfaction of his economic needs." Due, supra at 165 (quoting from A.N. Yiannopoulos, Property § 77, in 2 Louisiana Civil Law Treatise (1976)). "Things" ordinarily refer to "objects susceptible of appropriation and of pecuniary evaluation." A.N. Yiannopoulos, Property § 15, at p. 29, Louisiana Civil Law Treatise (1991). The Civil Code articles governing ordinary co-ownership to which Art. 2369.1 refers only govern the co-ownership of things, La. C.C. art. 797, and rights, La. C.C. art. 818. See generally, Spaht, Co-ownership of Former Community Property:
A Primer on the New Law, 56 La. L.Rev. 677, 681 (1996).
[4] Act 433, effective January 1, 1996, amended La. C.C. art. 2369.1 and added seven other code articles, La. C.C. arts. 2369.2-2369.8. These articles govern certain aspects of the co-ownership of former community property, most importantly the management of former community property.
[5] See also Rodrigue v. Rodrigue, 218 F.3d 432 (5th Cir.2000), cert. denied, 532 U.S. 905, 121 S.Ct. 1227, 149 L.Ed.2d 137 (2001), wherein the Federal Circuit Court described the requirements of ownership under Louisiana property law as follows:

As a useful framework for understanding the Louisiana Civil Code provisions on which our holding ultimately rests, we begin with general concepts of Louisiana property law. In the Civil Law, the bundle of rights that together constitutes full ownership of property comprises three separate sub-bundles: (1) usus  the right to use or possess, i.e., hold, occupy, and utilize the property; (2) abusus  the right to abuse or alienate, i.e., transfer, lease, and encumber the property, and (3) fructus  the right to the fruits, i.e., to receive and enjoy the earnings, profits, rents, and revenues produced by or derived from the property. In Louisiana, those three facets of ownership may be allocated in various combinations among different persons, with each having less than full ownership. For example, the owner of a legal usufruct ("usufructuary") has the right to use the property burdened with the usufruct (usus) and to enjoy the fruits of that property (fructus), but does not have the right to alienate the property (abusus); that right belongs to the naked owner, albeit subject to the usufruct. (Footnotes omitted.)
[6] The website further explains that independent contractor agents are "eligible for incentive and recognition awards which range from bonuses to travel packages." Cindy Strickler, the State Farm Resources Manager for Mr. Lanza's region, filed an affidavit stating that State Farm agents have no proprietary interest in the business generated under the State Farm Agent's Agreement, that unlike an insurance agency where the book of business is owned by the agent and has a market value to other agents, the State Farm agent does not own the customer list, and that the Agent's Agreement is merely a personal services contract. Further testimony at trial indicated that the sign outside Mr. Lanza's office read "Louis Lanza and State Farm," that his business checking account read "Louis Lanza State Farm Agent," that "Louis Lanza, State Farm Agent" has employees, to which he pays salaries and withholds taxes, that Louis Lanza personally owns the office furnishings such as desks and chairs, that State Farm does not withhold income taxes from his salary, and that Mr. Lanza files a Schedule C Form on his income tax return, which is entitled "Profit or Loss from Business" (Sole Proprietorship).
[7] We also reject Ms. Coudrain's argument that the State Farm Agency Agreement cannot be determinative of whether the Agency constitutes community property because that contract cannot be construed to interfere with her ownership rights under Louisiana's community property law. The Agency Agreement, which gives Mr. Lanza no ownership rights in the Agency or the Agency Agreement, is between Mr. Lanza and State Farm. This contract does not interfere with Ms. Coudrain's ownership rights because neither she, nor Mr. Lanza, have any ownership rights in the Agency nor the Agency Agreement. This case is distinguishable from all the cases cited by Ms. Coudrain, which involved partnerships and corporations. See Borrello v. Borrello, 614 So.2d 91 (La.App. 4 Cir.1992), writ denied, 616 So.2d 706 (La.1993) (holding that Ms. Borrello was not bound by the partnership agreement's provision which placed a set value on Mr. Borrello's partnership interest.); Fastabend v. Fastabend, 606 So.2d 794 (La.App. 3 Cir.1992), writ denied, 609 So.2d 231 (La.1992) (partnership agreement that excluded any claim on accounts receivable invalid as to valuation of partnership for partition purposes); accord Martinez v. Posner, Martinez and Padgett, 385 So.2d 525 (La.App. 3 Cir.1980), writ denied, 393 So.2d 727 (La.1980) and D'Spain v. D'Spain, 527 So.2d 309 (La.App. 5 Cir.1988) (non-partner spouse not bound by the partnership agreement), writ granted, remanded, 528 So.2d 152 (La.1988); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956) (restrictions in articles of incorporation, bylaws, or cross purchase agreements do not generally apply to transfers between spouses, unless both spouses sign).
[8] La. C.C. art. 2369.1 provides:

After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law or by juridical act.
When the community property regime terminates for a cause other than death or judgment of declaration of death of a spouse, the following Articles also apply to former community property until a partition, or the death or judgment of declaration of death of a spouse.
[9] La. C.C. art. 2369.2 provides: "Each spouse owns an undivided one-half interest in former community property and its fruits and products."
[10] She further argues that as co-owners of post-termination renewal commissions under La. C.C. art. 2369.2, Mr. Lanza has no right to compensation for the value of his services or labor in producing the fruits or products of former community property under La. C.C. art. 798.
[11] Although the Ross Court referred to these payments as "renewal commissions," it recognized that State Farm referred to them as "service compensation" defined as follows:

SERVICE COMPENSATION. For services rendered by you in any month while this Agreement is in force, in assisting policyholders, cooperating with adjusters in reporting and handling claims, and cooperating with and promoting the interests of the Company, you shall be paid for such month an amount equal to . . .
Ross, supra at 397.
[12] Under La. C.C. art. 2339, the natural and civil fruits of separate property produced during the existence of the community property regime are community unless a spouse reserves them as his separate property in a declaration made by authentic act or an act under private signature duly acknowledged. In this case, the husband had filed a declaration of paraphernality in which he reserved all fruits of his paraphernal and separate property.
[13] The Williams decision has been criticized because, after the court conceded that the former husband had a right to a commission upon the renewal and that this right was acquired as a result of labor performed during the community, it should have held that his right was a community asset that should be partitioned. Spaht and Hargrave, supra, § 3.38, p. 144 (1997). Further, the difficulty involved in determining the proportion of the renewal premium commissions attributable to services performed during the community should not have resulted in an allocation of the entire amount to the husband, but rather the commissions should have been shared equally. Id. at 144-145.
[14] We note that some commentators disagree, as Professor Spaht and attorney Moreno, in commenting on this particular case, have expressed their view that on remand "under the Ross-Talbot test, the renewal commissions are presumed to be community and to rebut the presumption, Mr. Lanza must show by the preponderance of the evidence that the renewal commissions were not the result of his community labor, effort, and skill." Spaht and Moreno, § 4.1, p. 57 (2004 Pocket Part); see also Lee Hargrave, Review of Recent Developments: 1991-1992 Matrimonial Regimes, 53 La. L.Rev. 877, 879 (1993) (arguing that, in Williams, supra, since it is the husband who is arguing that he produced the renewal commissions, the burden should be on him to establish that labor and its contribution). However, these views are contrary to the express language of La. C.C. art. 2340.