STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**05-1175**

**RICHARD G. TRAHAN AND ALTON J. TRAHAN**

**VERSUS**

**MERRY LOUISE MANLEY, LEOLA TERREBONNE, GARY E. THEALL
AND SANDRA KATHRYN LEHMAN**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF VERMILION, NO. 70897 C/W 75742
HONORABLE JULES EDWARDS, III, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE
**********

Court composed of Marc T. Amy, Michael G. Sullivan, Elizabeth A. Pickett, J. David Painter, and James T. Genovese, Judges.

**REVERSED AND RENDERED.**

**Pickett, J., dissents and assigns reasons.**

**Reule P. Bourque**
**P.O. Box 127**
**Kaplan, LA 70548**
**Attorney for Plaintiffs-Appellants:**
    **Richard G. Trahan and Alton J. Trahan**

**Gary E. Theall**
**P.O. Box 877**
**Abbeville, LA 70511**
**Attorney for Defendants-Appellees:**
    **Merry Louise Manley, Leola Terrebonne, Gary E. Theall, and Sandra**
    **Kathryn Lehman**

PAINTER, Judge.

The Plaintiffs, Richard and Alton Trahan ("the Trahan brothers"), appeal the trial court's judgment finding certain real property to be part of the community of acquets and gains formerly existing between each of them and their former wives. Finding that the trial court erred in failing to accept the uncontroverted testimony of Olive Trahan, we reverse.

FACTS

Alton Trahan and Leola Terrebone were married in 1964. Richard Trahan, Alton's brother, and Merry Louise Manley were married in 1965. In 1985 and 1986, the Trahan brothers executed a number of acts of sale whereby they acquired ownership of two tracts of land in Vermilion Parish. There was no declaration of marital status in any of the acts of sale, and the wives did not execute any recognition that the property was part of their husbands' separate estates.

Richard and Merry were divorced by judgment dated October 9, 1989, and, on November 10, 1989, the property purchases made in 1985 and 1986 were finally recorded. No settlement of the community property had been entered between them at the time of the trial of this matter.

In 1990, Alton and Leola divorced. They executed a community property settlement which did not mention the disputed property. In 1997, both Merry and Leola executed mineral leases of the disputed property in favor of SKH Energy Partners, L.P. The Trahan brothers filed a "Petition in Slander of Title," alleging that Merry and Leola were without rights to enter the leases. The Trahan brothers dismissed their action against SKH Energy pursuant to a settlement agreement and, on February 22, 1999, the main demand was dismissed pursuant to a motion to

1

dismiss for mootness and exceptions of prematurity and no right of action. On January 12, 2000, in fulfillment of a contingency fee contract, Merry and Leola conveyed an interest in the property to their legal representative, Gary Theall and his wife, Sandra Lehman.

On February 2, 2001, the Trahan brothers filed this suit asking for a declaratory judgment recognizing them as sole owners of the disputed property. After a trial on the merits, the trial court concluded that the Trahan brothers had failed to rebut the presumption that the disputed property was community in nature. The Trahan brothers appeal.

DISCUSSION

Louisiana Civil Code Article 2340 provides that "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." The presumption of community applies regardless of the source of the property. *Lanza v. Lanza*, 04-1314 (La. 3/2/05), 898 So.2d 280. The party who seeks to rebut the presumption, in this case the Trahan brothers, must prove, by a preponderance of the evidence, that the property is separate. *Talbot v. Talbot*, 03-0814 (La. 12/12/03), 864 So.2d 590; *Ross v. Ross*, 02-2984 (La. 10/21/03), 857 So.2d 384. The trial court found that the Trahan brothers did not carry this burden. "[A] trial court's findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review. *Biondo v. Biondo*, 99-0890, pp. 4-5 (La.App. 1 Cir. 7/31/00), 769 So.2d 94, 99." *Ross,* 857 So.2d at 395.

2

The record shows that prior to being acquired by the Trahan brothers, the disputed property was owned by their uncle, Allison Trahan. On May 15, 1985, after the death of Allison Trahan, the Trahan brothers obtained "[a]ll of Vendors' present or future undivided right, title and interest in and to the following two (2) tracts of land" from their cousins, heirs of Allison Trahan, via documents entitled "Private Act of Sale." The documents each provided that:

> This sale is made and accepted for and in consideration of the price and sum of ONE HUNDRED AND NO/100 DOLLARS, cash, which the said purchaser has well and truly paid in ready and current money to the vendor, who hereby acknowledge receipt thereof and grants full acquittance and discharge therefor.

At trial, the Trahan brothers testified that they did not actually pay any of the cousins for their property rights but that their cousins intended to donate the property to them. Two of the cousins testified at trial that they did not accept money for the property. However, as the trial court noted, neither stated whether they wanted to donate their interest to the brothers exclusively or to the brothers and their wives. The trial court concluded that the transactions were sales. The Trahan brothers do not dispute this finding on appeal.

Prior to his death, Allison Trahan executed a power of attorney in favor of his wife, Hazel R. Trahan, which gave her the complete authority to "bargain, grant, sell, convey, transfer, change, option [or] dedicate to public use . . . for any sum of money of other consideration" any and all of his property, both movable and immovable. Unknown to the family, Hazel sold the disputed property to her daughter from a prior marriage, Betty Jo Yeary, for ten dollars and "other consideration." After Allison's death, the Trahan brothers, expecting to inherit the property, searched for a will. The only will found was unsigned. At about this time, they discovered the sale to Yeary.

3

They filed a suit attempting to rescind the sale to her based on lesion beyond moiety. The outcome of that suit is unknown, as no judgment has been introduced into the record. However, there is no evidence in the record which would support a finding that either the power of attorney or the transfer to Betty Jo Yeary was invalid. On April 21, 1986, the Trahan brothers bought all of Betty Jo Yeary's rights to the property for $6,700.00. The brothers testified that they obtained the money for this purchase from their mother, Olive Trahan, and a copy of a certified check for $6,700.00 from Olive Trahan to "Betty Jo Yeary & Her Attorney Raymond A. Beyt," dated February 17, 1986, was introduced into the record. Given this information, we find that the trial court's finding that the transfers made by the cousins to the Trahan brothers were sales is not relevant to the outcome of the case since the property had been validly transferred to Yeary prior to the death of Allison Trahan. Therefore, we need only consider whether the property was acquired by the brothers as their separate property. Property acquired with separate funds constitutes separate property. La.Civ.Code art. 2341.

A deposition of the then 95-year-old Olive Trahan was introduced at trial. The brothers assert that it shows her intention to give the money, and thereby the property, to her sons as their separate property. The trial court, however, found the deposition to be of little value. We disagree. Although elderly, Mrs. Trahan was firm in her testimony that she gave the brothers the money to purchase the disputed property and that she intended it to be the separate property of her sons and did not intend a donation to their spouses. Her testimony that the money came from her is supported by a copy of a certified check dated February 17, 1986, in the amount of $6,700.00 made out to "Betty Jo Yeary & her attorney Raymond A. Beyt" and showing the

4

remitter as Olive D. Trahan. No evidence was admitted to controvert Mrs. Trahan's testimony, and her former daughters-in-law testified that they knew her to be an honest person. Although the manifest error standard of review applies to the trial court's findings of fact, "[a]n appellate court is not required, . . .to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles." *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987) (citing *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979)). In light of Mrs. Trahan's testimony, we find that the Trahan brothers have carried their burden of showing, by a preponderance of the evidence, that the disputed property is their separate property.

## CONCLUSION

The judgment of the trial court is reversed. Judgment is rendered in favor of the Plaintiffs-Appellants, Richard and Alton Trahan. Costs of this appeal are assessed to the Defendants-Appellees, Merry Louise Manley and Leola Terrebonne.

REVERSED AND RENDERED.

RICHARD G. TRAHAN AND ALTON J. TRAHAN

VERSUS

MERRY LOUISE MANLEY, LEOLA TERREBONE, GARY E. THEALL
AND SANDRA KATHRYN LEHMAN

**Pickett, Judge, dissenting.**

I respectfully dissent. In *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987), the supreme court stated:

> Appellate courts may not disturb the fact findings of the trier of fact in the absence of manifest error. *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1979). In *Arceneaux*, we posited a two part test for the appellate review of facts:
>
> > 1) The appellate court must find from the record that there is a reasonable factual basis for the finding of the trial court, and
> >
> > 2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).
>
> *Arceneaux*, 365 So.2d at 1333; *B and L Associates, Inc. v. Crump*, 369 So.2d 1094, 1095 (La.App. 1st Cir.1979).
>
> Accordingly, if an appellate court concludes that the trial court's factual findings are clearly wrong, the mere fact that some record evidence appears which would furnish a reasonable factual basis for the contested findings does not require affirmance. *Davis v. Owen*, 368 So.2d 1052, 1056 (La.1979). Although appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was justified in his conclusions. *See, e.g., Parker v. Rhodes*, 260 So.2d 706, 717 (La.App. 2d Cir.1972). **An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal**

1

**principles.**  *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1150 (La.1979).

In the matter before us it is clear from a review of the record that the trial court carefully considered Mrs. Olive Trahan's testimony.  The trial court did state clear and sound reasons for rejecting that testimony.  This finding of fact by the trial court clearly has a reasonable basis.  Therefore, I find no manifest error on the part of the trial court and would affirm the trial court's judgment.