NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**21-580**

**M.B.**

**VERSUS**

**T.B.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 85815
HONORABLE GREGORY P. AUCOIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and J. Larry Vidrine,[1] Judges.

**AFFIRMED.**

_____

[1] Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**S. Marie Johnson, LLC**
**237 W. Main Street**
**New Iberia, LA   70560**
**(337) 608-9932**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **M.B.**

**Kay Karre Gautreaux**
**405 W. Convent Street**
**Lafayette, LA   70501**
**(337) 232-7747**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **T.B.**

**PERRET, Judge.**

Marcus Anthony Bryant ("Marcus") appeals a December 10, 2020 judgment that partitioned the community property between himself and his former wife, Terrilyn Owens Bryant ("Terrilyn").[2] For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY:**

Marcus and Terrilyn were married on May 31, 2010, and established their matrimonial domicile in St. Martin Parish, Louisiana. On September 18, 2017, Marcus filed a petition for divorce, and a judgment was rendered on June 18, 2018. One child was born of their marriage; however, all issues related to child custody, visitation, child support, and interim spousal support have been resolved. Thus, the only issue before the trial court was the partitioning of the community property.

After a one-day bench trial and review of post-trial memorandums, the trial judge provided the following relevant facts and findings in his reasons for judgment (footnote omitted):

> The matter then proceeded to trial on the community property partition. The crux of the community property partition is the value to the marital community in the business of Marcus A. Bryant. Stephanie Halphen, forensic accountant, was appointed by the Court to determine its community property value. She performed an accounting of the law office using the date of engagement of the client; the settlement date, the deposit amount in the IOLTA account of settlement funds and a 33 1/3 attorney fee earned basis. Thereafter, a formula was used to calculate the income to the community.
>
> Based upon the evidence submitted to Ms. Halphen, she determined that the value of the revenue earned by Marcus Bryant to be $1,954,570.41. Mr. Bryant countered Ms. Halphen's testimony by testifying that he had split-fee arrangements for some of the cases that Ms. Halphen had accounted as whole fee cases. After review by the

[2] Although Marcus filed the petition for divorce designating the caption as "M.B." versus "T.B." and requested that the record be kept under seal, the trial judge ordered on January 3, 2018, that only the financial records be filed under seal. As such, the parties will be referred to herein by their names.

Court of the exhibits provided by Marcus Bryant in post-trial memorandum, Marcus Bryant had a split-fee arrangement with other attorneys for more than just the four cases as he testified. Based upon the settlement sheets reviewed by the Court of split-fee cases, the Court determines that Marcus Bryant earned the amount of $352,859.48 in split-fee arrangements while the other attorneys earned $352,761,78 in fees.

Utilizing the linear progression percentages, as determined by Stephanie Halphen, for each case found by the Court to be a split-fee arrangement, from the earned amount of $352,859.48, the amount of $176,429.74 is attributable to the community.

By Post-Trial Memorandum, Terrilyn Owens Bryant determined, after a review of the contingency fee contracts produced on the day of trial, that the amount of $81,407.83 in fees should be excluded from the $1,954,570.41 amount. The Court agrees with this exclusion from the calculation of community earnings.

With the deduction of $352,761.78, representing the amount of split-fees paid to other attorneys, and the exclusion of the amount of $81,407.83, representing the fees from cases earned in his office after September 17, 2018, the community earnings is reduced from $1,954,570.41 to $1,520,400.80. The Court finds that the one-half value of the community earnings attributable to Terrilyn Owens Bryant is $760,200.40.

Immovable property owned by Terrilyn Owens Bryant and Marcus Bryant consists of two parcels of property. Parcel 1 is 1.051 Acres with Day Care improvement located at 7052 Main Highway, St. Martinville, Louisiana. Parcel 2 is behind and adjacent to Parcel 1 containing 20.99 acres that includes a home (man-cave), barn and shed. The forensic accountant, using the appraisal of J. Harold Lambert, valued the property at $303,200 for the 20.99 acres and $245,500 for the 1.051 acres. Mr. Evan Himel, real estate appraiser, testified that the value of the 20.99 acres is $50,000 without a value placed on the improvements. He values the 1.051 acres at $330,000 for a total value of both parcels being $380,000. Mr. Lambert valued the 1.051 acres as $40,000 for land and $205,500 for improvements and the 20.99 acres as $193,600 for land and $109,600 for the improvement value. Since Mr. Himel did not provide an appraisal amount for the improvements on Parcel 2, the Court will accept the value of these two parcels of property for equalization purposes as $245,500 for Parcel 1 (1.051 acres with daycare development) and $303,200 for Parcel 2 (20.99 acres). To equalize property value, Marcus Bryant would owe Terrilyn Owens Bryant the amount of $28,850.

Each of the parties held various banking accounts in each of their names. The Court has reviewed the proposed division of assets

provided in the post-trial memorandum of Terrilyn Owens Bryant and will adopt the division of the various checking accounts as its own.

There is a Note Receivable from Delana Roberts d/b/a Owens Development Center relating to the improvements to the day-care center located on Parcel 1 of the immovable property. Testimony at trial indicated that Marcus Bryant, through his office, provided the funds for the improvements which totaled $170,378.43. Stephanie Halphen, forensic accountant, testified that the balance on the note was $106,728.73 with payments on the note being paid to Terrilyn Owens Bryant in the amount of $63,620.00. Mr. [Marcus] Bryant testified that he had no knowledge of the payments being made to Terrilyn Owens Bryant nor had he confected a payment plan for the repayment of the note. The Court finds Mr. [Marcus] Bryant is entitled to a credit of one-half the value of the payments made on the note ($31,810.00) since Mrs. [Terrilyn] Bryant has received all the payments. The Court finds that, since Mrs. [Terrilyn] Bryant is entitled to ownership of Parcel 1, which includes the daycare, that Mr. [Marcus] Bryant is entitled to one-half value of the balance on the note or the amount of $53,364.22 from Terrilyn Owens Bryant. Thereafter, all future payments on the note are to be paid to Terrilyn Owens Bryant.

The former marital domicile is the separate property of Terrilyn Owens Bryant for which Marcus Bryant during the community paid $38,539.30 in principal on the note. The Court finds that Marcus Bryant is entitled to reimbursement of $19,269.65 for those payments.

. . . .

The value of the community earnings of Marcus Bryant during the marriage is $1,5[2]0,400.80. The one-half value of the community earnings due to Terrilyn Owens Bryant is $7[60],200.40.[3]

The community property is partitioned with Parcel 1 belonging to Terrilyn Owens with a value of $245,500.00 and Parcel 2 belongs to Marcus Bryant with a value of $303,200.00. To equalize property value, Marcus Bryant owes Terrilyn Owens Bryant the amount of $28,850.

. . . .

The Court finds that the Ford F-250 belongs to Marcus Bryant and is not considered to be a reimbursement claim by him.

Mr. Bryant is entitled to a credit of one-half the value of the payments made by Delana Roberts to Terrilyn Owens Bryant on the note for improvements on the property of Parcel 1 in the amount of

---

[3] Because of a typo in this paragraph of the trial court's reasons for judgment, we edit the amount of the value of the community earnings from $1,510,400.80 to $1,520,400.80, and the amount of the one-half value of the community due to Terrilyn from $755,200.40 to $760,200.40.

$31,810.00. The Court finds that Terrilyn Owens Bryant is entitled to the Note payable by Delana Roberts. By the partition of the Note, the Court finds that Marcus Bryant is entitled to reimbursement for one-half value of the balance on the note or the amount of $53,364.22 from Terrilyn Owens Bryant. Thereafter, the Court finds that all future payments on the note are to be paid to Terrilyn Owens Bryant.

The Court finds that Marcus Bryant is entitled to reimbursement of $19,269.65 for those payments made on the mortgage note for the former marital residence (Chuck Street property) which is previously determined to be the separate property of Terrilyn Owens Bryant.

. . . .

The Court pretermits ruling on the credit/reimbursement claim of Marcus Bryant for state and federal taxes paid for 2018 on January 28, 2020. However, the Court finds that whatever credit/reimbursement is due to either party will only be based upon the actual tax due on these tax returns without any of the assessments for late fees, if any, interest and penalties. The state and federal tax returns are to be provided to the parties with the parties coming to an agreement as to equalization payment for the taxes paid in accordance with this judgment. Should the parties not agree on an amount, the parties may bring a motion before the Court for determination.

The reimbursement claims by Marcus Bryant for the Ford F-250, Evan Himel appraisal fee, and the forensic accounting fees of Stephanie Halphen are denied by the Court.

The Court finds that the amount of $744,361.51 for assets is due to Terrilyn Owens Bryant from Marcus Bryant. The Court finds that the amount of $18,527.23 is due to Marcus Bryant by Terrilyn Owens Bryant in reimbursements. The Court finds that an equalization payment in the amount of $725,834.28 is due Terrilyn Owens Bryant from Marcus Bryant.

On December 10, 2020, the trial court signed a lengthy judgment incorporating these reasons and addressing all of the issues presented by Marcus and Terrilyn.

Marcus now appeals this judgment, alleging the following twelve assignments of error:[4]

---

[4] The appellate brief lists thirteen assignments of error; however, we find a typo in the numbering of assignments of error because the alleged third assignment of error is merely a continuation of appellant's second assignment of error. As such, we will renumber, and review, all twelve assignments of error.

1.     Whether the trial court erred in allowing the court appointed forensic accountant to testify as to the inclusion of fees received post-termination of the community where the Defendant failed to first show that any portion of those fees resulted from the effort, skill, or industry of [Marcus] during the existence of the community.

2.     Whether the trial court erred in shifting the burden to [Marcus] to prove that fees he received post-termination of the community property regime were not community assets that should be included in the calculation of the marital portion.

3.     Whether the trial court erred in granting ownership of the Daycare tract to [Terrilyn] and an equalization payment of $28,850.00, while also granting [Terrilyn] ownership of the balance of the note payable by Delana Roberts, awarding ownership of the man cave tract to [Marcus] when the trial court accepted the value assessed to the tracts by appraiser Lambert the more equitable division would have been to accept the value of the tracts generated by appraiser Himel or to award the entire asset to [Terrilyn].

4.     Whether the trial court erred in denying [Marcus's] repeated requests for a continuance of the trial and denial of [Marcus's] request for a stay of the proceedings in order to seek review in the Third Circuit Court of Appeal for the denial of the continuances and the denial of the request to appoint an attorney to calculate the value of [Marcus's] work done pre-litigation, post-litigation and/or pre-termination or post-termination.

5.     Whether the trial court erred in denying [Marcus's] reimbursement claim for post-community payments made on the F-150 considering the value of the asset was significantly less than the post-community payments made.[5]

6.     Whether the trial court erred in denying [Marcus] a reimbursement claim for one-half of the fees of appraiser Himel.

7.     Whether the trial court erred in denying [Marcus] a reimbursement claim for one-half of the fees of the forensic accountant Halphen.

8.     Whether the trial court erred in awarding to [Terrilyn] the amount of $744,361.51 of the fees generated by [Marcus] which includes fees received and/or generated post-termination of the community.

9.     Whether the trial court erred in not awarding [Marcus] a reimbursement claim for a portion of the 2018 taxes and 2019 taxes paid.

---

[5] Although Marcus's brief states that the vehicle is a F-150, we find this to be a typo because both the record and judgment indicate that the vehicle at issue is a Ford F-250.

10.   Whether the trial court erred in granting [Terrilyn] a reimbursement of $43,301.00, which represents the total amount of community assets used during the marriage to pay down [Marcus's] student loan debt, instead of half of that amount, which would be a reimbursement to [Terrilyn] of $21,650.50.

11.   Whether the trial court erred in denying [Marcus's] request for a new trial.

12.   Whether the trial court erred in assessing all costs of the proceedings to [Marcus].

**STANDARD OF REVIEW:**

It is well settled that a "trial court is vested with great discretion in effecting a fair partition of community property." *Arterburn v. Arterburn*, 15-22, p. 4 (La.App. 3 Cir. 10/7/15), 176 So.3d 1163, 1167. A trial judge "is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses." *Graefenstein v. Graefenstein*, 03-1077, p. 6 (La.App. 5 Cir. 1/27/04), 866 So.2d 958, 961. Further, "[f]actual findings and credibility determinations made by the trial court in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error." *Politz v. Politz*, 49,242, p.6 (La.App. 2 Cir. 9/10/14), 149 So.3d 805, 812.

Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the fact finder is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). Thus, this court must not re-weigh the evidence or substitute its own factual findings just because it would have decided the case differently.

**APPLICABLE LEGAL PRINCIPLES:**

Under Louisiana law, "[p]roperty of married persons is either community or separate." La.Civ.Code art. 2335. Property in the possession of a spouse during the existence of the community property regime is presumed to be community, but

6

either spouse may rebut the presumption.  La.Civ.Code art. 2340.  Louisiana Civil Code Article 2338 defines community property as follows:

> The community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.

Louisiana Civil Code Article 2341 defines separate property as follows:

> The separate property of a spouse is his exclusively.  It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.

Under La.Civ.Code art. 2360, "[a]n obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation."  Further, La.Civ.Code art. 2361 states that "[e]xcept as provided in Article 2363,[6] all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations."

---

[6] Louisiana Civil Code Article 2363 states, as follows:

> A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse.
>
> An obligation resulting from an intentional wrong or an obligation incurred for the separate property of a spouse is likewise a separate obligation to the extent that it does not benefit both spouses, the family, or the other spouse.

According to La.Civ.Code art. 159, "[a] judgment of divorce terminates a community property regime retroactively to the date of filing of the petition in the action in which the judgment of divorce is rendered." Upon termination of the community, "[e]ach spouse owns an undivided one-half interest in former community property and its fruits and products." La.Civ.Code art. 2369.2.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In his first assignment of error, Marcus alleges the trial court erred in allowing the court appointed forensic accountant, Stephanie Halphen, "to testify concerning the value of the marital portion before [Terrilyn] presented any evidence to establish which cases/fees belonged in the community." Marcus argues Ms. Halphen testified regarding the contested attorney fees and "included deposits made in 2018, 2019[,] and 2020 that were received post-termination of the community."

In response, Terrilyn asserts the trial judge did not err in allowing Ms. Halphen to testify to her findings and that the judge was "capable of and did make determinations independently of the expert in making his findings." Terrilyn also asserts that pursuant to La.Civ.Code art. 2338, a contingency fee contract executed during the existence of the community is deemed a community asset. In support of this proposition, Terrilyn cites to *Due v. Due*, 342 So.2d 161, 165-66 (La. 1977), wherein the Louisiana Supreme Court held "that the attorney's interest in pending contingent fee contracts constitutes a patrimonial asset which, if the contract is acquired during the marriage, forms part of the community insofar as its value is based upon the attorney's services performed during the marriage."

"To the extent that a right to receive proceeds derives from a spouse's labor and industry during the existence of the community, that right is a community asset, even if the proceeds are received after dissolution of the community." *Villarrubia*

*v. Villarrubia,* 18-430, p. 4 (La.App. 5 Cir. 12/27/18), 263 So. 3d 949, 952. The Louisiana Supreme Court discussed partitions of community property in *Lanza v. Lanza*, 04-1314, p. 5 (La. 3/2/05), 898 So.2d 280, 283, and stated, in pertinent part (footnote omitted):

> Perhaps the broadest view of a patrimonial right found to be community property was taken in *Due* [*v. Due,* 342 So.2d 161 (La. 1977)], *supra*, where this Court held that a lawyer husband's contingency fee contract acquired during the community "creates in the husband a patrimonial asset, i.e., (in ordinary language) 'property,' . . . and which (to the extent that his labor and industry contribute during the marriage . . .) is an asset of the community," even though the attorney's right to collect this fee was conditional and uncertain. Consequently, the Court held that the ex-wife was entitled to obtain information regarding the existence and value of these contracts acquired during the marriage and to the inclusion of these contracts in an inventory of community property.

In this case, the court ordered Ms. Halphen, to "complete a forensic accounting of the parties' finances" and ordered "[a]ll financial records during the marriage be forwarded to her." At trial, Ms. Halphen testified that she was appointed to this case in January 2018, that she is not representing either party, and that she was "charged with determining the assets of the marital regime." Ms. Halphen testified that she prepared a joint detailed descriptive list of assets that she gathered from each of the parties and calculated the parties' community property subject to partition to be $1,954,570.41. Ms. Halphen testified that she arrived at this calculation by reviewing Marcus's settlement sheets, his IOLTA (Interest on Lawyers' Trust Accounts) bank account deposits, his bank statements, and his contingency fee agreements.

Although Ms. Halphen was questioned repeatedly on cross examination about the contingency fee contracts and files she reviewed in calculating the community portion of Marcus's income during the marital community, she

testified that "[Marcus's] files quite frankly were a disaster[,]" and that "[t]he client files were not in order." Specifically, Ms. Halphen testified:

> Okay. So initially when I began this engagement[,] I went to Mr. Bryant's office. I spent multiple days there trying to look at client files, checks, look for the reconciliation within the client files, which would - - with supporting invoices and contracts, I went through that whole exercise. And the client files as discussed many times with you [counsel for Marcus] and Mr. Bryant were not in good order. Not in compliance and I discussed with Mr. Bryant's accountants. I sent them a copy of the Louisiana Disciplinary Committee. I've done audits on plaintiff attorneys trust accounts and their client files and so, what I'm telling [you] is Mr. Bryant's files, his individual client files did not have sufficient documentation in terms of income, expenses, how everything was paid out, how his fees were transferred from the trust account to the operating account.

The judge, being the trier of fact, is entitled "to assess the credibility and accept the opinion of an expert just as with other witnesses" and is "to hear and weigh expert testimony in the same manner as any other evidence." *Head v. Head*, 30,585, p. 5 (La.App. 2 Cir. 5/22/98), 714 So.2d 231, 234. As such, "[t]he effect and weight to be given the expert's testimony depends upon the validity of the underlying facts relied upon by the expert, and rests within the broad discretion of the trial judge." *Id.* at 234.

After reviewing the record, we find no error in the trial court's decision to allow Ms. Halphen to testify to her findings, the basis of her findings and conclusions, and to allow her to defend her findings against Marcus's own records and evidence.

**ASSIGNMENTS OF ERROR NUMBER TWO AND EIGHT:**

In his second assignment of error, Marcus alleges the trial court erred in shifting the burden to him to prove that fees he received post-termination of the community property regime were not community assets that should be included in the calculation of the marital portion. Marcus argues that Terrilyn has "the burden of proving, by a preponderance of the evidence, which portion [of Marcus's] post-

community income resulted from cases that came into the office prior to the termination of the community and of those what fees were earned [through] the effort, skill, or industry exerted by [Marcus] during the community."

Marcus also addresses this same issue under his assignment of error number eight, wherein he alleges the trial court erred in awarding Terrilyn assets in the amount of $744,361.51, an amount he argues entailed fees he received post-termination of the community.

In response to Marcus's assignment of error two, Terrilyn argues the trial judge did not apply a legal presumption or shift the burden of proof to Marcus and again cites to the supreme court decision in *Due,* 342 So.2d at 165-66, wherein the court held "that the attorney's interest in pending contingent fee contracts constitutes a patrimonial asset which, if the contract is acquired during the marriage, forms part of the community insofar as its value is based upon the attorney's services performed during the marriage." In response to Marcus's assignment of error eight, Terrilyn alleges the trial judge reviewed Marcus's banking and business records, "the post-trial motion with supporting documentation, the split fee arrangements, as well as the testimony from Marcus Bryant to explain his fees earned, and then made his own credibility determinations in finding the appropriate amount attributed to the community, and ultimately due to Terrilyn Bryant."

Jurisprudence supports Terrilyn's argument that a contingent fee contract acquired during the marriage forms part of the community. *See Due,* 342 So.2d 161. However, because the income from the contingency fee contracts did not all come into Marcus's possession during the community regime, the presumption of community found in La.Civ.Code art. 2340 does not always apply. *Lanza*, 898 So.2d 280. Therefore, Terrilyn has the burden of proving which portion of

Marcus's post-community income resulted from contingent fee contracts that were signed during the community, and of those contracts, how much of the contingent fee was due to Marcus's effort, skill or industry exerted during the community.

As previously addressed under assignment of error number one, the trial court appointed Ms. Halphen to this case and charged her with determining the value of the community property in order for it to properly partition the community. As such, the trial judge could rely on Ms. Halphen's numbers and methods used in calculating the community assets while also considering the testimony and exhibits submitted by Marcus and Terrilyn. Based upon the evidence submitted to her, Ms. Halphen, determined the value of the revenue earned by Marcus to be $1,954,570.41. Ms. Halphen testified specifically to Marcus's legal files and accounts in arriving at this value, and stated as follows:

> Q. So Miss Halphen, let's go ahead and tell the Court with documents in your report how you arrived at that number.
>
> A. So typically what is supposed to happen and Miss Johnson [Marcus's attorney] is correct in that you get all of the client files with all of the contracts and you examine [all] of those, you discuss it and you look at time sheets for all the cases and come up with a percentage. And based on time worked and - - but I spent some time in Mr. Bryant's office. I requested all of those documents. They were not forthcoming. So[,] all that was forthcoming to me were the settlement sheets. And so when - - so that's all the documentation I had to make this calculation. So[,] it's his burden to prove - - it's my understanding that it's his burden of proof to produce the documents, so let me start there. In addition to that I requested on multiple occasions all the 2020 settlement sheets. And so those were never forthcoming to me, so Miss Johnson cites cases where a portion of the attorney's fees went to other attorneys, that may be true, but if he had provided the 2020 settlement sheets I could have taken those fees out. They were just not given to me.
>
> Q. Okay.
>
> A. So as a result I had to use all the deposits to the - - the only way I could come up with any calculation based on the shape of the client, Mr. Bryant[']s client files for 2020 was to use - -
>
> Q. IOLTA deposits?

A. The IOLTA deposits and that's what I did.

Q. Okay.

A. For anything prior to that for '17, '18[,] and '19[,] I used the settlement sheets that were provided to me. On each settlement sheet if the date of the - - they list a date of the accident on the settlement sheets and I asked for the contracts so I could use the contract as the calculation date. He said - - the response from counsel was that the contract date coincided with the date of the accident. That that's the response that they gave me. So I used the date of the accident as the start date in terms of calculating the pro rata share of the marital portion. So all that to say is for those years 2017 to 2019 I used the settlement sheets as the starting point and the basis for the attorney's fees. And so the actual fees, the settlement sheets listed the actual fees that went to Mr. Bryant. In some cases it's thirty-three and a third (33 1/3), in some cases it's less and some cases he split from 2017 to 2019. I only picked up Mr. Bryant's portion for that time period.

Q. Okay.

A. Does that make sense?

Q. Yeah. So to be clear on that when you reviewed each case was it a requirement that the case have come in to his office while there was a marriage in existence; correct?

A. Yes. But again, I did not have a signed contract. I did not have access to the signed contract so I used the settlement sheet which only has the date of accident.

Q. Okay.

A. And I was told that the assumption should [be] that the date of accident is close to the date of contract and use that as - - so that's the date I used, that's why I used it.

Q. So all of the cases you included had a cause of action that arose during the marriage; correct?

A. Correct.

Q. And then instead of taking the full amount of the settlement sheet as you moved through if it was a case that came in only six months before termination of the community you pro rated that, you didn't give her a hundred percent (100) of that, you only gave her the portion of the effort within the marriage; correct?

A. That's correct.

Q. Okay.

A. But I have to correct one statement you said. In 2020 I had no settlement sheets, so there was no - - I didn't know the date of - - I didn't know whether it was started within the date of marriage or not because the settlement sheets were not provided. So it was his burden of proof to provide me with the settlement sheets, so I just had to assume that all the settlements that have come in in 2020, which could be correct or not, but that's his burden of proof, my assumption was because I had nothing to contradict it was that all the 2020 to the IOLTA or the trust account were marital.

On rebuttal, Ms. Halphen continued to testify about her efforts to have Marcus provide her with his financial records, including bank statements, settlement statements and contingency fee contracts, as follows:

Mr. Bryant had no financial statements for any year under observation, which actually began in 2016. There were no reconciliations of IOLTA account or the operating account, which through this whole process has been multiple, two IOLTA accounts, two operating accounts. I requested client sub-account ledgers. There were no sub-account ledgers prepared, which would actually detail the settlement that was received and reconcile the advances and expenses paid and any write-down of expense and then zero out the settlement amount, which would have been by check number and description with a supporting invoice. I tried to work with his tax people and they had the same issues that I had in that [there] were basically no financials, no reconciliations of either cash or credit cards.

The trial judge took into consideration Marcus's testimony regarding the contingent fee contracts and split-fee arrangements as well as Terrilyn's post trial memorandum wherein she determined that the amount of $81,407.83 in fees should be excluded from the $1,954,570.41 amount. Based on the testimony and exhibits, the trial judge reduced the community business earnings from $1,954,570.41 to $1,520,400.80 and found that one-half of the business earnings attributable to Terrilyn is $760,200.40.

After reviewing the record and exhibits, we find no merit to Marcus's assignments of error that the trial judge shifted the burden to him to prove the fees he received post-termination of the community property regime were not

14

community assets or that the trial judge manifestly erred in its judgment that Terrilyn be awarded $744,361.51 for assets of the community. We find the trial judge heard all of the testimony, considered the evidence submitted by Marcus and Terrilyn, and made factual findings based upon his own independent review of the testimony and evidence.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In his third assignment of error, Marcus alleges the trial court erred in granting ownership of the day care tract to Terrilyn and an equalization payment of $28,850.00, while also granting Terrilyn ownership of the balance of the note payable by Delana Roberts. Further, Marcus alleges the trial judge erred in awarding him the ownership of the man cave tract "when the trial court accepted the value assessed to the tracts by appraiser [Harold] Lambert [and that] the more equitable division would have been to accept the value of the tracts generated by appraiser [Evan] Himel or to award the entire asset to [Terrilyn]."

In response, Terrilyn argues the trial "judge has wide latitude to partition and allocate property," and that the trial judge "correctly weighed the testimony and the two appraisal reports" in accepting the appraisal report of Harold Lambert. Terrilyn alleges the trial court considered Mr. Himel's expert report but that it was "deemed to lack credibility as the values asserted in the report were unreliable."

Louisiana Revised Statutes 9:2801 sets forth the procedure by which community property is to be partitioned when the spouses are unable to agree on a partition of community property. Specifically, La.R.S. 9:2801 provides, in pertinent part (emphasis added):

> A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that

15

would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:

. . . .

(2) Within sixty days of the date of service of the last filed detailed descriptive list, each party shall either traverse or concur in the inclusion or exclusion of each asset and liability and the valuations contained in the detailed descriptive list of the other party. For good cause shown, the court may extend the time period for a party to traverse or concur in the detailed descriptive list of the other party. The trial of the traverses may be by summary procedure. At the trial of the traverses, the court shall determine the community assets and liabilities; the valuation of assets shall be determined at the trial on the merits. The court, in its discretion, may by ordinary procedure try and determine at one hearing all issues, including those raised in the traverses.

(3) The court may appoint such experts pursuant to Articles 192 and 373 of the Louisiana Code of Civil Procedure as it deems proper to assist the court in the settlement of the community and partition of community property, including the classification of assets as community or separate, the appraisal of community assets, the settlement of the claims of the parties, and the allocation of assets and liabilities to the parties.

(4) The court shall then partition the community in accordance with the following rules:

(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.

(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.

(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.

(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or

16

unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.

(e) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.

The immovable property at issue is located at 7052 S. Main Highway, in St. Martinville, La., and was purchased by the parties during their marriage. The property consists of parcel one, which is 1.051 acres with a day care that is being developed and used by Terrilyn's sister, Delana Roberts, and parcel two, which is 20.99 acres with a home, barn and shed that Marcus refers to as the "Man Cave."

At trial, Marcus called Mr. Himel, an expert in real estate appraisal, who appraised the 1.051 acres at $330,000 and the 20.99 acres at $50,000.00 (without a value placed on the improvements), for a total value of both parcels being $380,000.00. In regard to the 20.99 acres, Mr. Himel testified as follows:

Q.    Could you tell the Court what's on that twenty (20) acres.

A.    There is a residential structure on the twenty (20) acres.

Q.    Do you know how many square feet it is?

A.    I did not physically inspect the residence.

Q.    What else is on the property?

A.    It looked like some storage buildings, maybe some covered metal covered areas, canopies, porches.

Q.    It's developed; is it not?

A.    With a single home, yes.

Q.    So[,] your appraisal has nothing to do with the house on top of the property, it doesn't have anything to do with the barn, it has

17

nothing to do with the shed, it has nothing to do with any of the structures and improvements put on that property.

A.    No, ma'am.  The scope of work was to appraise the vacant twenty (20) acres as it [being] vacant.

Q.    As [being] vacant.  Correct.

A.    Yes, ma'am.

Q.    So you can't tell the Court what the twenty (20) acres is worth with the, with the structures on top.

A.    My analysis didn't include that, no, ma'am.

Terrilyn submitted into evidence the June 16, 2020 appraisal report of the property prepared by Mr. Lambert, a Louisiana General Certified Appraiser.  Mr. Lambert appraised the 1.051 at $245,500 and the 20.99 acres, with improvements, at $303,200.00 for a total value of both parcels being $548,700.00.

After reviewing the evidence, the trial judge noted in his reasons for judgment that Mr. Himel did not provide an appraisal amount for the improvements on parcel two and, thus, he decided to accept the value of the two parcels as reported by Mr. Lambert, which was $245,500 for parcel one (1.051 acres with day care development) and $303,200 for parcel two (20.99 acres with house, barn and shed).  Upon review, we find no error in the trial court's decision to accept Mr. Lambert's appraisal of the land and its improvements over Mr. Himel's testimony in evaluating the value of the immovable property.

We also find no merit to Marcus's argument that the trial court erred in granting ownership of the day care tract to Terrilyn and an equalization payment of $28,850.00, while also granting Terrilyn ownership of the balance of the note payable by Delana Roberts.  Per La.R.S. 9:2801(c), the trial judge could "divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses."  In this case, the record indicates the trial judge considered the

18

improvements made on the two parcels of property as well as the $170,378.43 loan made by Marcus to Ms. Roberts for the Owens Development Center in making his allocation. Although Marcus argues the trial judge erred in granting Terrilyn ownership of the balance of the note payable, we find he properly ordered for Marcus to receive "one half the value of the balance on the note or the amount of $53,364.22 from Terrilyn" as well as "a credit of one-half the value of the payments made on the note ($31,810.00) since Mrs. [Terrilyn] Bryant has received all the payments." Specifically, the trial judge stated:

> The Court finds Mr. [Marcus] Bryant is entitled to a credit of one-half the value of the payments made on the note ($31,810.00) since Mrs. [Terrilyn] Bryant has received all the payments. The Court finds that, since Mrs. [Terrilyn] Bryant is entitled to ownership of Parcel 1, which includes the daycare, that Mr. [Marcus] Bryant is entitled to one-half value of the balance on the note or the amount of $53,364.22 from Terrilyn Owens Bryant. Thereafter, all future payments on the note are to be paid to Terrilyn Owens Bryant.

Based on the record, we find the trial judge properly valued the assets and divided the community assets so that each spouse received property of an equal net value. Accordingly, we find no merit to this assignment of error.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In his fourth assignment of error, Marcus alleges the trial court erred in denying his repeated requests for a continuance of the trial and in denying his request for a stay of the proceedings in order to seek review of the trial court's rulings. Additionally, Marcus argues the trial court erred in denying his "request to appoint an attorney to calculate the value of his work done pre-litigation, post-litigation and/or pre-termination or post-termination."[7]

---

[7] Although the record index provides that a motion and order to set the matter for trial on the merits was filed on July 20, 2020, and is located on page 145 of the record, we note that this motion and page number are missing from the record before this court. The record also indicates that Marcus filed one motion and order to continue the trial on August 10, 2020, the same day as the scheduled trial, but the first page of Marcus's two-page motion to continue is also missing from the record.

In response, Terrilyn alleges on July 20, 2020, Marcus filed a motion to set the case for trial for August 10, 2020, and that there was "no objection to the date set and there was no surprise or lack of understanding of the issues being heard." Terrilyn argues that Marcus "had his entire office, including records of client files, settlement statements, bank accounts, split fee arrangements, etc., at his disposal at the time the case was set for trial."

Louisiana Code of Civil Procedure Article 1601 provides that "[a] continuance may be granted in any case if there is good ground therefor." Under La.Code Civ.P. art. 1602, a continuance must be granted if "the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance." The court in *Suarez v. Acosta*, 15-750, pp. 9-10 (La.App. 5 Cir. 3/16/16), 194 So.3d 626, 632 (citations omitted) discussed the trial court's discretion in granting or denying a continuance and stated in pertinent part:

> In determining whether to grant a continuance, the trial court must consider the particular facts in each case. Some factors to consider are diligence, good faith, and reasonable grounds. The trial court may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of justice. A trial court has great discretion in granting or denying a motion for a continuance under La. C.C.P. art. 1601, and that discretion will not be disturbed on appeal in the absence of clear abuse of discretion.

The trial transcript indicates that Marcus made an oral motion to continue the trial on the morning of trial and that the trial judge denied the continuance. Specifically, the record provides as follows, in pertinent part:

MS. JOHNSON:

Judge, I'm not sure if you received a Motion to Continue I filed this morning.

20

BY THE COURT:

You can make an oral motion.

BY MS. JOHNSON:

After going through the report and of course looking at some things for settlement purposes and all those good things, we have two issues with the calculation of the numbers in the report.

The first is when you go through what's called 211A that Miss Halphen has put together, she lists all the cases that she believes were part of the community. And she also list[s] on there the amount of fees that Marcus has earned from his cases. But when we go through the sheet of cases we look at a lot of cases, I mean, I have three in my Motion that are just representative where the fees attributed to Marcus were earned and paid to an attorney who is was in a split fee arrangement with. So just for example the three that - -

BY THE COURT:

And that's a very good defense to mitigate her testimony and you can present that.

BY MS. JOHNSON:

I understand that, Your Honor. And that's about a hundred thousand ($100,000) worth.

BY THE COURT:

Okay.

BY MS. JOHNSON:

And that's just those three cases. And then we have - - so basically, every split fee case that we have that's what happened in that particular instance.

The second part is that how she calculated what belongs in the community does not take into account the law that says whatever's generated based on his skill, effort and labor is the part that is part of the community property. There's no mechanism that Miss Stephanie used to be able to determine what labor came pre-determination and what labor came after. So - -

BY THE COURT:

Well, then you're going to have a lot of fun with her on cross examination. The Motion for Continuance is denied.

21

MS. JOHNSON:

Your Honor, I'd ask for my last request. And what I was asking for was for an attorney to be appointed to go and look at it and come to a determination as to what - -

BY THE COURT:

I don't see any basis. I can make that determination.

BY MS. JOHNSON:

Okay. And then the other issue, of course, is that I received this report on Tuesday, Your Honor. So we had less than five days to actually go through every single file to challenge each one of those files that we found that had this discrepancy.

BY THE COURT:

Ma'am, this is Mr. Bryant's records, his own records. He should know what's in his own records.

BY MS. JOHNSON:

I'm not disputing that. He should know generally, Your Honor, but we're talking about a hundred (100) cases that are - -

BY THE COURT:

Denied.

BY MS. GAUTREAUX (Terrilyn's Council):

And, Your Honor, I would put on the record the delay in receiving the report was because he wouldn't pay the bill. I mean, we would have had the report - -

BY THE COURT:

I understand all of that. Mr. Bryant's been delaying this thing for months and months and months. It would not have been delayed had he paid the fees when he was supposed to have paid them, when I ordered him to pay them.

We agree with the trial judge that Marcus "should know what's in his own records," and that he is the person with the best knowledge of his client files. Accordingly, we find no abuse of discretion in the trial court's decision to deny the

22

continuance as well as Marcus's request to appoint an additional attorney to the case.

**ASSIGNMENT OF ERROR NUMBER FIVE:**

In his fifth assignment of error, Marcus alleges the trial court erred in denying his reimbursement claim for post-community payments made on the Ford F-250 considering the value of the asset was significantly less than the post-community payments made. Specifically, Marcus argues he used separate funds, in excess of $24,000.00, for a vehicle that Ms. Halphen valued at a little over $4,000.00. Marcus argues the trial court erred in not giving him a credit for the extinguishment of this community debt.

In response, Terrilyn alleges the trial judge correctly denied Marcus's reimbursement claim because he was awarded the Ford F-250 and has exclusive use and enjoyment of this asset following the divorce. In support of this argument, Terrilyn cites to *Sheridon v. Sheridon*, 03-103 (La.App. 3 Cir. 02/04/04), 867 So.2d 38, arguing this court held that a wife was not entitled to reimbursement of one-half of the amounts she paid on a note executed to finance purchase of an automobile that she exclusively used following termination of community. As such, Terrilyn alleges that the spouse who has the exclusive use of an automobile following the termination of the community is not entitled to reimbursement or credit for notes paid on it. We agree.

In *Moore v. Moore*, 05-290, pp. 6-7 (La.App. 3 Cir. 11/2/05), 917 So.2d 1126, 1131, this court addressed the *en banc* ruling in *Sheridon* and stated, in pertinent part:

> [I]n *Sheridon*, in the context of determining whether the husband was required to reimburse the wife one-half of the amount she paid on the note on a community vehicle following termination of the community, we adhered to our prior jurisprudence that held that a spouse is not entitled to reimbursement for payments made on a note on a

23

community vehicle following termination of the community when the spouse who made the payments also had the exclusive use of the vehicle. "[A]n automobile rapidly depreciates so that its use is directly related to its depreciation. Equity dictates that [the spouse with exclusive use of a vehicle] be charged for the full amount of maintaining an asset of which he had exclusive use while that asset steadily declined in value." *Davezac v. Davezac*, 483 So.2d 1197, 1199 (La.App. 4 Cir.1986) (citation omitted).

Considering this court's jurisprudence on this issue, we find no error in the trial court's decision to deny Marcus's request for reimbursement since he has had the exclusive use of the Ford F-250 following the termination of the community.

**ASSIGNMENTS OF ERROR NUMBER SIX AND SEVEN:**

In assignments of error six and seven, Marcus alleges the trial court erred in denying his reimbursement claims for one-half of the fees for Mr. Himel, the appraiser, and for Ms. Halphen, the forensic accountant. Although Marcus fails to brief the issue for a reimbursement claim for Mr. Himel's fees, we will not dismiss the issue as abandoned upon finding no merit to either of these reimbursement claims.[8] Under La.Code Civ.P. art. 1920, the trial court "may render judgment for costs, or any part thereof, against any party, as it may consider equitable." The trial court "has great discretion in awarding costs, including expert witness fees, deposition costs, exhibit costs, and related expenses." *Reynolds v. La. Dep't of Transp.*, 15-1304, p. 4 (La.App. 1 Cir. 4/13/16), 194 So. 3d 56, 59. "The discretion of the trial court to assess court costs is vast and is not subject to reversal unless there is an abuse of discretion." *Farrar v. Whaley*, 16-790, p. 19 (La.App. 3 Cir. 2/1/17), 211 So.3d 449, 461, *writ denied*, 17-409 (La. 4/13/17), 218 So.3d 626.

The record reflects that on January 6, 2020, Marcus was held in contempt of court for his failure to cooperate and comply with Ms. Halphen and was sentenced

---

[8] *See McCorvey v. McCorvey*, 05-174 (La.App. 3 Cir. 11/2/05), 916 So.2d 357, *writ not considered*, 05-2577 (La. 1/13/06), 920 So.2d 218, and *writ denied*, 05-2577 (La. 5/5/06), 927 So.2d 300 (wherein this court addressed the merits of defendant's appeal despite defendant's assignment of error not being properly briefed.)

24

to ten days in jail and ordered to pay costs and attorney fees. Additionally, during trial, the trial judge commented that Marcus has "been delaying this [trial] for months and months and months" and that the trial "would not have been delayed had he paid the fees when he was supposed to have paid them[.]" The trial court also found that "Mr. Himel's report did not provide an appraisal amount for the improvements to the 20.99 acres of immovable property" and consequently, it chose to accept the appraisal report of Mr. Lambert. Under these facts, we find the trial judge was well within his great discretion in assessing the expert fees to Marcus.

**ASSIGNMENT OF ERROR NUMBER NINE:[9]**

In his assignment of error nine, Marcus alleges the trial court erred in not awarding him a reimbursement claim for a portion of the 2018 and 2019 taxes. Marcus argues the trial court did not address whether he "should receive a credit (or a deduction of equalizing payment) regarding payments (past or to be made in the immediate future) of the state and federal tax obligations due on the 2019 & 2020 income that the Court awarded to Defendant."

On review, we find the trial court addressed the tax issues but found insufficient evidence to rule at that time. As such, the trial judge stated in his reasons that he "pretermits ruling on the credit/reimbursement claim of Marcus Bryant for state and federal taxes paid for 2018 on January 28, 2020[,]" and that "whatever credit/reimbursement is due to either party will only be based upon the actual tax due on these tax returns without any of the assessments for late fees, if any, interest and penalties." We find no abuse of discretion in the trial judge's decision to pretermit this issue until the state and federal tax returns are submitted.

---

[9] We addressed assignments of error number two and eight together because they both involve the community property regime and the calculation of the marital portion; therefore, please see assignment of error number two for discussion pertaining to assignment of error number eight.

**ASSIGNMENT OF ERROR NUMBER TEN:**

In assignment of error number ten, Marcus alleges the trial court erred in granting Terrilyn a reimbursement of $43,301.00, which represents the total amount of community assets used during the marriage to pay down his student loan debt, instead of half of that amount, which would be a reimbursement to Terrilyn in the amount of $21,650.50.

In response, Terrilyn alleges the trial judge "was called upon to partition all assets and debts" and that he "allocated the assets to each party realizing that an equalizing amount would be due." Terrilyn argues that the trial judge "combined the equalizing sum due, together with the reimbursement claims of each party to determine the final amount of a reimbursement claim due to each to net out a final amount."

On review, we find the judgment specifically addresses Terrilyn's reimbursement claims due to her for the payment of community debts post termination with separate money, as well as the payment of the separate debts of Marcus with community funds, and awarded Terrilyn $32,552.42.[10] In the reasons for judgment, the trial judge lists eight of Terrilyn's credit/reimbursement claims "for payment of community debts post termination with separate money, as well as payment of separate debts of Mr. Bryant with community funds[.]" This list includes payments for: (1) Marcus's student loan in the amount of $43,301.00 with one half of that amount being $21,650.55; (2) one-half payment Chase Credit Card

---

[10] The December 2020 judgment provides:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that TERRILYN OWENS BRYANT is entitled to receive from MARCUS A. BRYANT the amount of THIRTY-TWO THOUSAND FIVE HUNDRED FIFTY-TWO AND 42/100 ($32,552.42) DOLLARS in reimbursement for payment of community debts post termination with separate money and payment of separate debts of Marcus A. Bryant with community funds.

#9675 in the amount of $1,825.25; (3) one-half payment Barclay Credit Card #4477 $6,688.00; (4) one-half payment of Capital One #5167 in the amount of $183.04; (5) one-half payment of Capital One #9572 in the amount of $71.11; (6) one half payment Sears Credit #6630 in the amount of $1,872.00; (7) one-half payment of Chase Credit #7286 in the amount of $262.52; and (8) one-half cost of appraisal in the amount of $400.00. These eight reimbursement claims add up to the amount of $32,952.47. Because the trial court judgment awarded the total sum of $32,552.42 for Terrilyn's reimbursement for payment of community debts post termination with separate money and payment of separate debts of Marcus with community funds, we find no merit to Marcus's assignment of error that the trial judge erred in granting Terrilyn a reimbursement of $43,301.00 on Marcus's student loan.

**ASSIGNMENTS OF ERROR NUMBER ELEVEN AND TWELVE:**

Marcus's last two assignments of error allege the trial court erred in denying his request for a new trial and in assessing all costs of the proceedings to him. Marcus contends the judgment rendered "is contrary to the law and the evidence and further, there was other good ground for the granting of a new trial." Specifically, Marcus alleges that the following issues were not addressed by the trial court:

> (a) Hundreds of thousands of dollars in attorney fees, received post-termination, were generated by cases that did not originate during the existence of the community and/or were fees not solely earned by Plaintiff.
>
> (b) Adversely, though the Court included the afore-mentioned fees, it did not apply Ms. Stephanie Halphen's "time-in the community" formula to those cases (see Halphen's Exhibits 211 and 211[A]).
>
> (c) The Court did not address a credit to Plaintiff/deduction of equalizing payment regarding the state and federal tax obligations due on the 2019 & 2020 income that the Court awarded to Defendant.

27

(d) The Court considered the expert opinion of Halphen though she was not appointed by the Court to perform any work regarding calculation of the community regime.

(e) Defendant is in possession of a community asset, a 1972 Chevy Nova worth approximately $15,000.00, that was not included in the Court's ruling.

(f) The Court granted Defendant a reimbursement of $43,301.00, which represents the total amount of community assets used during the marriage to pay down Plaintiff's student loan debt, instead of half of that amount, which would be a reimbursement to Defendant of $21,650.50.

Louisiana Code of Civil Procedure Article 1972 addresses motions for a new trial and provides, as follows:

A new trial shall be granted, upon contradictory motion of any party, in the following cases:

(1) When the verdict or judgment appears clearly contrary to the law and the evidence.

(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.

(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

According to La.Code Civ.P. art. 1973, "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." "The trial court's discretion in ruling on a motion for new trial is great, and we will not disturb its decision on appeal, absent an abuse of that discretion." *Arceneaux v. De La Rosa*, 04-1057, p. 4 (La.App. 3 Cir. 12/8/04), 889 So.2d 383, 387, *writ denied*, 05-0080 (La. 3/18/05), 896 So.2d 1009.

Upon review of the record, we find the trial court addressed the issues that were properly before it and that Marcus failed to allege a valid ground for the trial court to grant a new trial under either article 1972 or 1973. Accordingly, we find no abuse of discretion by the trial court in denying Marcus's motion for new trial.

28

We also find no merit to Marcus's argument that the trial court erred in assessing all costs of the proceedings to him. Although Marcus alleges in this assignment of error that he did not "receive a reimbursement credit/deduction for Halphen's expert fees[,]" we addressed this issue previously wherein we found that the trial judge was well within his great discretion in assessing the expert fees to Marcus, especially upon the judge finding that Marcus "delay[ed] this [trial] for months and months and months" and that it "would not have been delayed had he paid the fees when he was supposed to have paid them[.]" Accordingly, we find no merit to this assignment of error.

In conclusion, we hereby affirm the trial court judgment in its entirety. All costs of this appeal are assessed to Appellant, Marcus Bryant.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.